IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE CARNAHAN | ) | |
|     Plaintiff | ) | Civil Action No. 13-353 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| STERLING MEDICAL CORPORATION | ) | Magistrate Judge Susan Paradise Baxter |
|     Defendant | ) | |

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Susan Paradise Baxter[1]

Plaintiff Julie Carnahan brings suit alleging that Defendant Sterling Medical Corporation terminated her employment in retaliation for engaging in activity protected by the False Claims Act. Presently pending before this Court is Defendant's motion to dismiss. ECF No. 4. Plaintiff has filed an Opposition to the motion to dismiss [ECF No. 8] and Defendant has filed a Reply Brief [ECF No. 9].

**The Factual Allegations of the Complaint**

Plaintiff alleges that she was employed as a Licensed Practical Nurse by Sterling Medical Corporation at the Veterans' Clinic from June 9, 2009 through May 17, 2011. ECF No. 1, ¶ 7. Plaintiff explains that Sterling is a corporation operating a number of medical facilities including the McKean Veterans' Clinic in Bradford, Pennsylvania. Id. at ¶¶ 2-3. By and through the operation of the Veterans' Clinics, Sterling received reimbursements and other monies paid by or

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

1

through the Veterans Administration and the United States Department of Veterans Affairs. Id. at ¶¶ 4, 19.

In the weeks leading up to the termination of her employment, Plaintiff had complained, both by way of email and telephone to individuals at Sterling's corporate headquarters, including Karen Blatt, Clinical Liaison, about a number of issues. Id. at ¶ 8. At the request of Blatt and others, Plaintiff wrote up a list detailing these issues on May 15, 2011. Id. at ¶ 9. The list included complaints about Clinic Manager Sarah Colson and Dr. Susan Panah. ECF No. 1-2, pages 1-4. Plaintiff expressed her concern "about the legal issues that surround some of the events that could cause harm to us and/or patients. I worry that the decision she makes will put someone in harm's way and/or get our clinic closed down." Id. at page 1.

As to the conduct of Colson, Plaintiff complained that Colson directed Plaintiff and others to not report verbal abuse of patients by another Sterling physician, Dr. Loeb; failed to follow Sterling's corporate policies regarding signed medication agreements; and forged Dr. Panah's name to a prescription. Id. see also ECF No. 1, ¶ 12. As to the conduct of Panah, Plaintiff explained that she would regularly have another doctor (a cardiologist not employed by Sterling or affiliated with the Veterans Administration) read EKGs and advise her about patient treatments and prescriptions and then Dr. Panah would bill for these services as if she had provided them herself. ECF No. 1-2; ECF No. 1, ¶ 11.

On May 17, 2011, Plaintiff met with Cindy Mendocino, Sterling's Director of Human Resources, at the Veterans' Clinic for the express purpose of discussing the list of issues she drafted two days earlier. ECF No. 1, at ¶ 10. During the meeting between Plaintiff and Mendocino, Colson and Panah barged in and began accusing Plaintiff of serious misconduct including theft of a prescription pad. Dr. Panah threatened to resign if Plaintiff were not fired. Id.

at ¶ 13. Mendocino then placed a telephone call to Karen Blatt, and Dr. Panah repeated her allegations against Plaintiff. Id. at ¶¶ 14-15. Plaintiff was then asked to leave the room and she was not given an opportunity to refute the allegations made against her. Id. at ¶ 16. Following the conclusion of the telephone call with Mendocino, Panah, Colson, and Blatt, Plaintiff's employment was terminated. Id. at ¶ 17.

Plaintiff alleges that the email to Blatt and her own actions in May of 2011 constituted the collecting of information about possible fraud involving the use of federal government funds and that her actions on May 15th and 17th constituted the reporting of such conduct in an effort to stop violations of the False Claims Act. Id. at ¶¶ 23-24.

**Retaliation under the False Claims Act[2]**

The False Claims Act "seeks to redress fraudulent activity which attempts to or actually causes economic loss to the United States government." Hutchins v. Wilentz, Goldman &

---

[2] The False Claims Act provides liability for any person who:

(1) Knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2) Knowingly makes, uses or causes to be made or used, a false record or statement to get a false claim or fraudulent claim paid or approved by the Government;
(3) Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; [ …]
(7) Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government […]

31 U.S.C. § 3729(a). A "claim" is defined by the Act as: "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

3

Spitzer, 253 F.3d 176, 186 (3d Cir. 2001) cert. denied, 536 U.S. 906 (2002). The whistleblower provision of the False Claims Act "protects employees who assist the government in the investigation and prosecution" of these violations because "few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment or any other form of retaliation." Id. at 185-86.

The elements of a cause of action under § 3730(h)[3] (the whistleblower protection section) are: "1) the employee engaged in 'protected conduct' and 2) that employee was discriminated against because of that 'protected conduct.'" United States ex rel. Hefner v. Hackensack Univ. Medical Ctr., 495 F.3d 103, 110 (3d Cir. 2007) quoting Hutchins, 253 F.3d at 186.

At the core of the requisite "protected conduct" is a "false claim for payment to the government." If there is no potentially viable false claim, there can be no whistleblower protection under the False Claims Act. See Dookeran v. Mercy Hospital of Pittsburgh, 281 F.3d 105, 108 (3d Cir. 2002). The False Claims Act "protects a wide variety of conduct, including investigation for, initiation of, testimony for, or assistance in, a False Claims Act claim, and determining what activities constitute protected conduct is a fact specific inquiry." Quint v. Thar Process, Inc., 2011 WL 4345925, at *15 (W.D. Pa.) quoting Campion v. Northeast Utils., 598 F.Supp.2d 638, 648 (E.D. Pa. 2009).

Here, the complaint generally alleges that Plaintiff's actions in May of 2011 "constituted the collecting of information about possible fraud involving the use of federal government

---

[3] Section 3730(h) provides in relevant part: "Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section … shall be entitled to all relief necessary to make the employee whole." Id.

funds" and the Blatt email on May 15th and the subsequent meeting with Mendocino on May 17th "constituted the reporting of such conduct in an effort to stop violations of the False Claims Act." ECF No. 1, ¶¶ 23-24. The complaint also alleges that Dr. Panah billed for services rendered by others. Id. at ¶ 11.

Since the filing of the complaint and the motion to dismiss in this case, the United States Court of Appeals for the Third Circuit has decided an issue of first impression in this Circuit, namely whether the pleading requirements under Federal Rule 9(b) (which requires pleading fraud with particularity) apply in a False Claims Act lawsuit. In Foglia v. Renal Ventures Management, LLC, 754 F.3d 153 (3d Cir. June 6, 2014), the Third Circuit examined the split of authority amongst the other Circuit Courts of Appeal and held that a False Claims Act claimant within this Circuit must plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. Describing a mere opportunity for fraud will not suffice." Id. at 157-58 (internal citation omitted).

Because Plaintiff did not have the benefit of the Foglia decision at the time of the filing of the complaint, she will be given the opportunity to amend her complaint if she believes that more specific pleading is necessary to comply with Rule 9(b) requirements. See Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIE CARNAHAN, | ) | |
| Plaintiff, | ) | Civil Action No. 13-353 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| STERLING MEDICAL CORPORATION, | ) | Magistrate Judge Susan Paradise Baxter |
| Defendant. | ) | |

# O R D E R

AND NOW, this 30th day of September, 2014;

IT IS HEREBY ORDERED that Plaintiff has until October 21, 2014, to file an Amended Complaint in light of the ruling in <u>Foglia v. Renal Ventures Management, LLC</u>, 754 F.3d 153 (3d Cir. June 6, 2014).

IT IS FURTHER ORDERED that Defendant's motion to dismiss [ECF No. 4] be dismissed as moot. After October 21, 2014, Defendant may file or renew its motion to dismiss.


<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge